FILED

NOV 17 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 08-11855-B-13 |
| Timothy Dale Rikard and<br>Frances Rikard, | DC No. PLF-5 |
| Debtors. | |

**MEMORANDUM DECISION REGARDING APPLICATION FOR
COMPENSATION OF DEBTORS' COUNSEL**

Peter L. Fear, Esq., of the Law Offices of Peter L. Fear, appeared on behalf of the debtors, Timothy Rikard and Frances Rikard.

Deanna K. Hazelton, Esq., appeared on behalf of the chapter 13 trustee, Michael H. Meyer, Esq.

In this contested matter the court is asked to decide whether a chapter 13 debtors' attorney may be paid for post-confirmation fees and costs, which exceed the amount originally estimated in the confirmed chapter 13 plan, without first confirming a modified plan. The chapter 13 plan currently in effect provides for a 0% distribution to unsecured creditors. Because payment of the requested fees and costs will not reduce or delay the distribution to creditors, the answer in this case is, yes.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. §§ 503 & 1329[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A).

**Background and Findings of Fact.**

This bankruptcy was filed on April 3, 2008. Michael H. Meyer, Esq., was appointed as the chapter 13 trustee (the "Trustee"). In July 2008, the debtors, Timothy and Frances Rickard ("Debtors") confirmed a first modified chapter 13 plan which had a term of 60 months and which provided for post-petition monthly payments to the Trustee in the amount of $2,760. The distribution to unsecured creditors in the first modified plan was fixed at "no less than a 2% dividend."

In the confirmation order the court also approved the "no look" attorney's fees requested by Debtors' counsel, Peter L. Fear, Esq. ("Fear"), in the amount of $3,500. The Debtors had already paid Fear $2,000. The balance of the no-look fee, $1,500, was *estimated* in the plan as the cost of future attorney's fees to be incurred in the case and was to be paid through the plan as an administrative expense at the rate of $166.67 per month.

In April 2009, the court confirmed the Debtors' second modified plan which provided for monthly payments to the Trustee in the amount of $2,185, increasing later to $2,380. The distribution to unsecured creditors was reduced in the second modified plan to "no less than a 1% dividend." That distribution was reduced again to "no less

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

than a 0% dividend" in December 2009 when the Debtors confirmed the currently effective third-modified plan (the "Plan"). The Plan retained the 60-month term and provides for post-confirmation payments to the Trustee in the amount of $2,340 per month increasing later to $2,460. The Plan preserves the provision for payment of Fear's "estimated" fees as approved in the original confirmation order.

During the course of the bankruptcy Fear put a significant amount of time into the case performing various services as reflected in the record and detailed in his fee application.[2] Altogether, as of the time Fear filed his fee application, he had spent 57.4 hours working on this case. Fear's legal fees totaled $9,081 and he incurred costs in the amount of $573.37. After deducting the amount of the no-look fee already approved in the initial confirmation order, Fear now requests payment of additional fees and costs in the amount of $6,154.37 (the "Additional Fees"). The Debtors have approved and consented to payment of the Additional Fees. The Trustee does not object to the amount of the Additional Fees, he only objects to payment of the Additional Fees without another modified chapter 13 plan.

**Issues Presented.**

All of the chapter 13 plans that have been confirmed in this case provide that Fear would receive post-confirmation attorney's fees in the "estimated" amount of $1,500. When the first modified plan was confirmed, the Trustee's statutory compensation was 9.5% of all distributions to creditors. Subsequently, the Trustee reduced his compensation to 6%.[3] That reduction in the Trustee's compensation will

---

[2]The record suggests that the numerous modified plans were necessary to address objections filed by the Trustee and to cure notices of default filed by the Trustee. Altogether, the Trustee has served and filed six notices of default in this case, including one filed on November 9, 2011, one day before the hearing on this motion.

[3]The timing of this fee reduction and the calculations to explain it do not appear in the record. Standing chapter 13 trustees are appointed by the United States Trustee. 28 U.S.C. § 586(b). The percentage fee that a chapter 13 trustee can charge in a case is limited by statute "not to exceed 10%." 28 U.S.C. § 586(e)(1)(B)(i). However, the maximum annual

3

result in surplus funds in the estate, funds that are not specifically committed for distribution to any creditors, in the approximated amount of $8,700 (the "Uncommitted Funds"). Fear contends that Uncommitted Funds are sufficient to pay his Additional Fees without any reduction or delay in the payment of claims otherwise provided for in the Plan. The Trustee contends that the unsecured creditors are entitled to receive the Uncommitted Funds even though the Plan itself does not promise anything to the unsecured creditors. The issue presented here is twofold: Does Fear's request for Additional Fees constitute a modification of the Plan? If so, is it necessary for the Debtors to confirm a fourth modified plan which increases the estimated attorney's fees before the Uncommitted Funds can be used to pay the Additional Fees?

**Analysis and Conclusions of Law.**

     **Approval of the Additional Fees.** Fear requests approval and payment of his Additional Fees as a cost of administration in this case. Bankruptcy Code § 503(b) provides that the court may approve administrative expenses, that are distinct from claims allowed under § 502, after notice and a hearing. Administrative expenses must reflect "the actual, necessary costs and expenses of preserving the estate." § 503(b)(1)(A). Fear's application is supported by detailed time records and a declaration which show the services rendered, the costs incurred, and the necessity for those services. Fear provided legal services which go beyond the level of service generally associated with the no-look fees allowed in chapter 13 cases without a detailed application.[4] The Debtors affirmatively approved and consented to payment of the Additional Fees. Adequate notice of the fee application was given to all

---

compensation for chapter 13 trustees is fixed by the Attorney General of the United States. 28 U.S.C. § 586(e)(1). The percentage fee which a chapter 13 trustee can charge in any given year is therefore a function of the volume of payments that the trustee distributes, the trustee's overhead, and the limitation on the trustee's personal compensation.

    [4]The no-look fees in chapter 13 cases are standardized in all courts of the Eastern District of California and are provided for in the court's Guidelines For Payment of Attorneys' Fees in Chapter 13 Cases effective October 17, 2005.

4

creditors. The creditors have not objected to payment of the Additional Fees. The Trustee has not objected to approval of the Additional Fees, he only objects to payment of the Additional Fees without another modified plan. The court is therefore persuaded that the Additional Fees reflect necessary and reasonable costs and expenses of preserving the estate. § 503(b)(1)(A).

**Payment of the Additional Fees.** Once the Debtors confirmed their first modified chapter 13 plan, that plan became binding on all of the parties and creditors. § 1327(a). However, a confirmed plan can be modified at any time after confirmation, but before completion of payments. § 1329(a). Once approved, each subsequently modified plan replaces the preceding plan and becomes the operative instrument that defines the rights of the parties and governs administration of the case. § 1329(b)(2).

The Code requires that a modified chapter 13 plan must satisfy certain requirements before it can be approved. Pertinent here is the requirement that a modified plan must be filed in good faith (§ 1325(a)(3)), and it must pay to unsecured creditors at least as much as they would receive in a chapter 7 (the "best interest" test, § 1325(a)(4)). Here, the Debtors' operative Plan provides for a distribution to the unsecured creditors at the reduced rate of "no less than 0%." Presumably, the 0% distribution satisfied both the "good faith" and the "best interest" tests or the Plan should not have been approved in the first place. To the extent that payment of the Additional Fees will reduce the amount of Uncommitted Funds that could otherwise be paid to unsecured creditors, the unsecured creditors will still receive "no less than 0%" as originally promised in the Plan.

Any discussion of the Trustee's objection must begin with reference to the Plan itself. The Plan has six provisions that are relevant to this analysis.[5] The first is section 3.05 which fixes the Trustee's compensation at "up to 10% of the plan

---

[5] The form of plan used in this case (EDC 3-080, revised 2/12/2008) is the standard form approved for use in all chapter 13 cases filed in the Eastern District of California pursuant to General Order 05-03 as amended by General Order 08-02.

5

payments."[6] The second is section 3.07 which provides generally that "approved administrative expenses" shall be paid in full through the Plan.[7] The third is section 3.08 which provides specifically for the payment of Fear's attorney's fees through the Plan. This applies to both the initial no-look fees and to "any additional fees" approved after confirmation of the Plan. It is here that Fear's post-petition fees are "estimated" at $1,500.[8] The fourth is section 3.20 which commits a dividend to unsecured creditors of "no less than 0%."[9]

The last two terms in the Plan which are relevant here are sections 5.01 and 5.02.[10] Section 5.01 requires the Trustee to distribute the "funds available for

---

[6] **3.05 Trustee's fees.** Pursuant to 28 U.S.C. § 586(e), Trustee shall receive up to 10% of plan payments, whether made before or after confirmation but excluding direct payments on Class 4 claims.

[7] **3.07 Administrative expenses.** Except to the extent the court approves, and the claimant agrees to a different treatment, . . . approved administrative expenses shall be paid in full through the plan.

[8] **3.08 Debtor's attorney's fees.** Debtor paid an attorney $2,000.00 prior to the filing of the petition. Any additional fees the court may approve shall be paid in full through this plan. Debtor estimates that a further $1,500.00 in attorney's fees will be incurred throughout this case.

[9] **3.20 Class 7. General unsecured claims.** Claims not listed as Class 5 or 6 claims, and that are not secured by property belonging to Debtor, will receive no less than a 0% dividend pursuant to this plan. Debtor estimates that general unsecured claims, including the under-collateralized portion of secured claims not entitled to priority, total $237,572.06.

[10] **5.01** After confirmation of this plan, funds available for distribution will be paid monthly by Trustee to holders of allowed claims and approved expenses.

**5.02 Distribution of plan payment.** Each month, the plan payments . . . must equal at least the aggregate of: **(a)** Trustee's fees; **(b)** any monthly contract installments due on Class 1 claims; **(c)** $166.67 for administrative expenses described in section 3.06, 3.07, and 3.08, distributed between administrative claimants as specified in section 5.03; and **(d)** the monthly dividends specified above for Class 1 arrearage claims and Class 2 secured claims. To the extent the plan payments are not needed to pay contract installments on Class 1 claims, approved administrative expenses, Class 1 arrearage claims, or Class 2 secured claims, they shall be distributed on a pro rata basis first to Class 5 priority claims, second to holders of Class 6

distribution," after confirmation to "allowed claims and approved expenses." Section 5.02 defines how the Plan payment must be calculated, and allocates those funds to assure that the Plan is both feasible and capable of completion within the stated time. The Plan allocates a monthly payment in the amount of $166.67 to satisfy approved "administrative expenses," including attorney's fees. At that rate, the balance of Fear's estimated no-look fee ($1,500 paid through the Plan) should have been satisfied in the ninth month after confirmation. Payment of the Additional Fees will require another 37 months to complete, payment of all fees requested by Fear will require approximately 46 months. The term of the Plan is 60 months. Payment of the Additional Fees in this case will not require an increase in the Plan payment, an extension of the Plan term, or a change in the payment allocation for administrative expenses in section 5.02(c).[11]

The Trustee argues that payment of the Additional Fees requires a modified plan because, it (1) substantially increases the administrative expense as originally "estimated" in section 3.08, and (2) substantially reduces the amount of Uncommitted Funds which would otherwise be available for distribution to the unsecured creditors. It is not clear what the Trustee relies upon to support his contention that the unsecured creditors are necessarily entitled to receive the Uncommitted Funds. At oral argument, the Trustee's counsel referred to section 3.20 of the Plan which describes the 0% distribution as "no less than." By inference, the language in section 3.20 suggests that unsecured creditors could receive more than the stated 0%, but there is nothing in the Plan that guarantees that result, or that identifies a source of funds for any additional

---

unsecured claims, and third to Class 7 unsecured claims.

[11] The court is not suggesting here that formal modification would be required to increase the Plan payment or the allocation in section 5.02(c). This court frequently approves stipulations to increase plan payments to address feasibility issues without the necessity of a modified plan. Likewise, the court frequently approves stipulated adjustments to the "administrative expense" allocation in section 5.02(c) when such is requested by the trustee and agreed to by debtor's counsel.

7

distribution. Further, section 3.20 must be read consistently with sections 3.07, 3.08, 5.01 and 5.02 which clearly contemplate that (1) the attorney's fees stated in the Plan are merely "estimated," and (2) administrative expenses approved after confirmation will be paid in full through the Plan from available funds.

Modification of a confirmed plan in chapter 13 is governed by § 1329. The changes that can be made in a modified plan are summarized in § 1329(a) which states in pertinent part:

> § 1329. Modification of plan after confirmation.
>
> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>
> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance . . . .

Based on the plain language of the statute, it does not appear that a formal plan modification is necessary unless the debtor seeks to make one of the changes enumerated in § 1329(a). Substantive modifications to a confirmed plan, such as the reduction or reclassification of a previously allowed secured claim, cannot be approved if they are not provided for under § 1329(a). A debtor may not enlarge the kinds of plan modifications allowed under § 1329(a). *See Chrysler Financial Corporation v. Nolan (In re Nolan)*, 232 F.3d 528, 532-33 (6th Cir. 2000).

This does not suggest that technical adjustments cannot be made during the case to facilitate administration of the case and to ensure its successful completion. Technical modifications to a confirmed plan, such as increasing the plan payment to achieve feasibility, or adjusting the allocation of funds to pay administrative expenses,

8

are frequently approved and implemented without a formal plan modification. Many of these technical adjustments are already provided for in the form plan. For example, the post-petition payment of a mortgage claim may be increased or decreased without court approval to reflect the current payment required under the terms of the loan and security documents. This adjustment is self-executing even though the plan, on its face, is supposed to state the amount of the post-petition mortgage payment in class 1. The Plan already provides for this adjustment.[12]

The Trustee's compensation is also subject to periodic adjustment which may be implemented without court approval. (*See* footnote 3, *supra*) The Uncommitted Funds would not have existed but for the fact that the Trustee reduced his initial compensation from 9.5% to 6%. Both the initial Trustee's compensation and the subsequently reduced compensation constitute technical modifications of the Plan. Adjustments to the Trustee's compensation are already contemplated in section 3.05 of the form plan which qualifies the Trustee's compensation as being "up to" 10%. Reduction of the Trustee's compensation did not mitigate the Debtors' duties under the Plan, neither did it reduce nor delay any distribution as promised to the creditors. It therefore did not require a formal modified plan.

Based on the statute, § 1329(a), it appears that modification of a plan is only necessary to accommodate some change of circumstances that will change the amount or timing of the payments to a creditor or to a class of claims.[13] The Plan at issue here clearly distinguishes between administrative expenses approved under § 503 and

---

[12]The form plan provides in sections 3.10(d) that the debtor shall forward any notice of change in the mortgage payment to the trustee, and "[i]f any such notice advises Debtor that the amount of the contract installment payment has increased or decreased, the plan payment shall be adjusted accordingly.

[13]As a practical matter, this court frequently approves, without a formal modified plan, an increase in the payment to a specific secured creditor to either resolve an objection to confirmation of the plan or to reflect the actual claim as filed by the creditor. The Trustee routinely requires or agrees that such "modifications" be memorialized in the confirmation order.

claims allowable under § 502. Therefore, nothing in § 1329(a) suggests that modification of a chapter 13 plan is required solely to provide for payment of an approved administrative expense if the treatment of a claim or a class of claims is unaffected. Nothing in the Plan binds the Debtors to pay the unsecured creditors more than 0%. Therefore, payment of the Additional Fees does not increase or decrease the promised distribution or extend or reduce the time for payments to the unsecured class. Payment of the Additional Fees is not governed or limited by § 1329(a).

The Trustee would argue that a modified plan is necessary to give the creditors notice that they will not receive the full Uncommitted Funds. Looking at this purely as a notice/due process issue, the court is satisfied that adequate notice has been given. Nothing in the record suggests that the creditors were ever given notice of the Uncommitted Funds in the first place. When the Trustee reduced his compensation, he did not give notice that there would be an increase of "available funds" for distribution. The notice of hearing for this fee application was served on all of the creditors. It gives a complete explanation of how the Additional Fees would be funded and the resulting impact on the Uncommitted Funds. None of the creditors objected.

**Conclusion.**

The Plan provides that approved post-confirmation administrative expenses shall be paid in full through the Plan. This includes Fear's initial no-look fee plus "any additional fees the court may approve." Fear's Additional Fees can be paid in full from the Uncommitted Funds, within the term of the Plan, and without reducing or delaying any distribution promised to the creditors. Therefore, the court finds and concludes that Fear's Additional Fees can be paid through the Plan in this case without requiring the Debtors to confirm another modified Plan.

/ / /

/ / /

/ / /

/ / /

The Additional Fees appear to be necessary and reasonable based on the amount of work required to keep this case afloat. There were no objections to the amount of the Additional Fees and the Debtors have given their consent to payment. Accordingly, Fear's application for payment of the Additional Fees will be approved. The Trustee's objection to payment of the Additional Fees through the current Plan will be overruled.

Dated: November __17__, 2011

W. Richard Lee
United States Bankruptcy Judge

Timothy Dale & Frances Rikard, Case No. 08-11855-B-13/DC No. PLF-5

Timothy Dale Rikard
Frances Rikard
1719 Athens
Clovis, CA 93611

Peter L. Fear, Esq.
Attorney at Law
7750 N. Fresno St., #101
Fresno, CA 93720-1145

Michael H. Meyer, Esq.
Chapter 13 Trustee
P.O. Box 28950
Fresno, CA 93729-8950

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare St., Ste. 1401
Fresno, CA 93721